BRYAN DEON MILLER,                    )
                                      )
        Petitioner,                   )
                                      )
v.                                    )       No. 1:07-CV-283 / 1:02-CR-27-1
                                      )       Chief Judge Curtis L. Collier
UNITED STATES OF AMERICA,             )
                                      )
        Respondent.                   )
                                      )

## MEMORANDUM

*Pro se* petitioner Bryan Deon Miller ("Petitioner") filed a motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 419). Following the Court's Order

(Court File No. 420), the United States filed a response (Court File No. 446). This Court sentenced

Petitioner to 400 months in prison on December 5, 2005, after the original sentence was remanded

in light of *United States v. Booker*, 543 U.S. 220 (2005) (Court File No. 365). Defendant pleaded

guilty to conspiracy to distribute five kilograms or more of cocaine hydrochloride and 100 kilograms

or more of marijuana in violation of 21 U.S.C. §§ 841 and 846, and conspiracy to commit money

laundering in violation of 18 U.S.C. § 1956. Petitioner appealed his sentence and, after it was

affirmed (Court File No. 406), Petitioner timely filed his § 2255 motion (Court File No. 419).

Petitioner claims (1) ineffective assistance of counsel, (2) involuntary and unknowing plea, (3)

violation of his Sixth Amendment right to counsel, and (4) an abuse of discretion in his sentencing.

The Court finds the materials thus submitted, together with the record of the underlying

criminal case (1:02-CR-27-1), conclusively show Petitioner is not entitled to relief on any of the

claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary

hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY**

Petitioner's motion for the following reasons.


## I.      RELEVANT FACTS AND PROCEDURAL HISTORY

The following pertinent facts were stipulated by Petitioner in the plea agreement (Court File

No. 252) and are taken from the Presentence Investigation Report ("PSR"):

> 37.      Several separate investigations conducted by local, state, and federal authorities revealed that in about the mid-1990s, a group of individuals belonging to the Crip gang in Los Angeles, California, relocated to Chattanooga, Tennessee, and began distributing marijuana, powder cocaine, and crack cocaine in the Chattanooga area.  Drugs were shipped by person, courier, the mails, and package delivery services.  When packages were shipped through the mails or by private delivery services, various locations were utilized and individuals involved in the drug conspiracy obtained the shipments. The illegal drugs would then be broken down for further local distribution, and drug proceeds would be collected and sent back to the drug suppliers in Los Angeles by person, through the mail, private delivery services, and/or via Western Union wire transfers. The evidence reflects that over 1,000 pounds of marijuana was sent to the Chattanooga, Tennessee area, and over $500,000 in cash was wired back to the Los Angeles, California area.
>
> . . .
>
> 35.      Defendant obtained or arranged for the shipment of drugs from the Los Angeles, California area to the Chattanooga, Tennessee area. Defendant was from the Los Angeles area and relocated for a period of time in Chattanooga. He utilized other individuals who helped him receive, store, distribute marijuana and cocaine. He met with individuals and distributed drugs in both locations. Defendant also traveled back and forth between California and Tennessee to arrange for the shipments of drugs.
>
> Defendant's involvement in the drug scheme is charged in Count One of the Superseding Indictment. By pleading guilty to this offense, defendant stipulates that he conspired to distribute at least five kilograms of cocaine powder and 1,000 kilograms of marijuana.

> Defendant personally wired drug proceeds back to California to pay for additional drugs and had knowledge of other wire transfers made by other codefendants. He also received and caused to be received wire transfers which were payments for drugs. Western Union records evidence that defendant personally wired at least $58,430 back to California on at least 36 occasions. He also received 64 wire transfers in California totaling $110,090. Defendant also recruited others to wire money back to California on several occasions. The money was wired back to California to disguise and conceal the true ownership of the money and to promote the drug activities by insuring that future shipments of marijuana could be made. Defendant's involvement in this scheme is charged in Count Two of the Superseding Indictment.

(PSR at ¶¶ 35, 37).

On March 26, 2002, Petitioner was indicted in a forty-five-count superseding indictment and on December 5, 2002, he pleaded guilty to Count One, conspiracy to distribute five kilograms or more of cocaine hydrochloride, and 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)-(B) and to Count Two, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. Petitioner stipulated to the underlying facts described above as supporting his plea in the plea agreement (Court File No. 252). He agreed to these same facts at his rearraignment hearing, but denied any gang affiliations (Court File No. 438 ("Rearraign. Tr.") at pp. 26-27). The probation officer determined Petitioner's base offense level was 34 pursuant to USSG § 2D1.1(c)(3) (PSR at ¶ 84). In calculating his Guideline range, the probation officer applied a two-level enhancement under § 2D1.1(b)(1) because there was a reasonably foreseeable use of firearms by codefendants, and a four-level enhancement for his leadership role in the offense under § 3B1.1(a), resulting in a total offense level of 40 (*id.* at ¶¶ 85, 87, 89). Based on his total offense level of 40 and a criminal history category of III, Petitioner's Guidelines range for imprisonment was 360 months to life (*id.* at 138).

Petitioner filed numerous objections to the PSR, objecting to the enhancements for the presence of firearms, the four-level enhancement for the leadership role, the drug quantity used to determine the base offense level, and the lack of a reduction for acceptance of responsibility (Court File No. 319 ("Sentencing Tr.") at pp. 29-38). The government presented witnesses and evidence to support the presentence report and in opposition to objections based on the enhancements and drug quantity, resulting in the Court's denial of Petitioner's objections (*id*. at p. 140). The Court also determined acceptance of responsibility was not warranted due to Petitioner's failure to cooperate and his motion to withdraw his guilty plea at the start of the sentencing hearing, which was denied (Sentencing Tr. at pp.140-141).

Petitioner's sentence was subsequently remanded for resentencing under *Booker*. (Court File No. 333); *United States v. Miller*, 134 F. App'x 898 (6th Cir. 2003). At the beginning of resentencing, the Court incorporated by reference its findings and rulings from the prior sentencing proceeding (Court File No. 373 ("Resentencing Tr.") at p. 3). The Court considered the mitigating factors raised by Petitioner, his maturity since incarceration, progress in Bureau of Prisons' programs, and family support, and reimposed the original sentence of 400 months (*id*. at pp. 17-18). Petitioner's sentence within the Guidelines was upheld as reasonable and the amended judgment was affirmed (Court File No. 406 at pp. 5-6).

II.     **STANDARD OF REVIEW**

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

III.     DISCUSSION

A.     Ineffective Assistance of Counsel

5

Petitioner contends his counsel was ineffective because he "failed to fully explain evidence against" the defendant and did not explain possible sentencing enhancements, which influenced him to plead guilty without being aware of his "possible exposure at sentencing" (Court File No. 419 at p. 4).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the

standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held the two-part *Strickland* test is applicable in the context of guilty pleas. Therefore, the defendant must show defense counsel's representation fell below an objective standard of reasonableness and there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58-59. To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error

he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir.1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*).

Other than Petitioner's lone assertions he would have gone to trial had his counsel not promised him a lower sentence, and his last-minute attempt to withdraw his guilty plea at the time of sentencing, there is no evidence Petitioner's defense was prejudiced. Rather, the transcript from the rearraignment proceedings clearly demonstrates Petitioner understood his counsel could not make any guarantees as to his sentence before the Court accepted his plea of guilty. The Court and Petitioner's counsel explicitly made efforts to ensure there were no other promises or "side deals" outside what was represented in the plea agreement influencing his decision to plead guilty.

> THE COURT: Does this plea agreement, this document I'm holding in my hand, contain all the understandings that you have with the United States, regarding the disposition of your case?
>
> MR. SWAFFORD: Does this plea agreement - - does this constitute the deal that we've made with Gregg Sullivan?
>
> THE DEFENDANT: Oh, yeah. Yes. Yes.
>
> THE COURT: Are there any other understandings that you have with the United States regarding your case that are not set out in this plea agreement?
>
> THE DEFENDANT: No, I guess not. I don't know.

| | |
|---|---|
| THE COURT: | Okay. Let me explain to you why I ask that. It doesn't happen much now, but what used to happen was that a plea agreement like this would be filed in the record, and then a person would go off to jail, and once they'd been in jail, they would file a motion with the Court asking to be released from jail. And they would say that, 'Although the plea agreement says this, that actually what the deal was, that me and the prosecutor had agreed that I would not have to go to prison. And that was an understood agreement, but it just wasn't put in the plea agreement.' |
| | So what I'm asking, if there's any side deals or any other agreements or understandings that you have with the United States about your case that are not set out in this document? |
| MR. SWAFFORD: | Bryan, they haven't given you any special deals, have they? |
| THE DEFENDANT: | No. |
| MR. SWAFFORD: | You understand, and they have explained to you with specificity, and I have explained to you with specificity, that you're not guaranteed any 5k benefits or any of these reducing benefits I've explained to you might be available. Is that correct? There is no guarantee that that would be available. Is that correct? |
| THE DEFENDANT: | Yeah, that's correct. |
| MR. SWAFFORD: | And this is the entire deal right here, and there is nothing else that you can rely upon at this point in time. Is that correct? |
| THE DEFENDANT: | Yes. |
| | . . . |
| THE COURT: | . . . Aside from your plea agreement, has any officer or agent of the government promised |

or suggested that you will receive a lighter sentence or some other form of leniency if you plead guilty?

THE DEFENDANT: No.

. . .

THE COURT: Mr. Sullivan, what is the maximum punishment that Mr. Miller faces for these two violations? Also advise him if there is any mandatory minimum penalty that applies.

MR. SULLIVAN: Yes, Judge. With respect to Count 1, by pleading guilty Mr. Miller is facing a mandatory minimum sentence of 10 years in jail and a maximum of up to life imprisonment, a fine of up to $4 million, supervised release for a period of at least 5 years, a 100-dollar special assessment.

On Count 2, he is facing imprisonment for up to 20 years in jail, a fine of up to $500,000, supervised release for a period of up to 3 years, and another 100-dollar special assessment.

THE COURT: Mr. Miller, if the Court accepts your guilty plea, you will be adjudged guilty of the offense, and this may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearms. Knowing these penalties, do you still wish to plead guilty?

[Off the record discussion]

THE DEFENDANT: Can you repeat your question? I mean, it's kind of like bothering - - I mean, I hear you, but I'm not hearing you.

THE COURT: Yes. I saw your reaction when Mr. Sullivan stated the maximum punishment - -

THE DEFENDANT: Thirty years.

THE COURT:          - - and my impression was that you were shocked or amazed.

THE DEFENDANT:      Yeah, because I was kind of like looking - - I thought I was about to get, like, 13 - - 10 to 13 years.

THE COURT:          What Mr. Sullivan did was tell you what the maximum punishment is.  And that is the absolute most that you can get.  What Congress does is to set a maximum punishment for every crime.  That's the most anybody can ever get.  I'm quite sure that you and Mr. Swafford have talked about the sentencing guidelines.

THE DEFENDANT:      (Moving head up and down).

THE COURT:          Okay.  The Sentencing Commission has given judges guidelines to use in determining what sentence a person should get.  A sentence can never go above whatever the statutory maximum is.  But what the sentencing guidelines tell the judge to do is look at how many other crimes the person has been involved in, what other things the person may have done, how much there was involved in drugs.  So you could have ten different people charged with this very same offense, and each one would get a different sentence.  But nobody could get more than whatever the stautory maximum is.  So somebody who, let's say has five or six prior convictions, obviously they would probably get more than somebody who is facing a conviction for the first time.

THE DEFENDANT:      Yes.

THE COURT:          Someone who has, let's say 100 pounds ought to get more than somebody who has 5 pounds.

THE DEFENDANT:      Yeah, I understand that.

| | |
|---|---|
| THE COURT: | So there are a lot of factors that go into it. The Court cannot determine what sentence you will receive, because the Court is going to get a report from the probation office. The probation office is going to look into all these things. They will investigate your background. They will investigate where you went to school, what you've done with your life. They will investigate what type of involvement you had in this offense. And they will make a report to the Court. And then the Court's sentence will be based upon whatever the guidelines come out to be. But under no circumstances could that sentence be over what the statutory maximum is. That's like a ceiling we cannot go beyond. |
| THE DEFENDANT: | Okay. So these right here is the most I can get. |
| THE COURT: | That's the most you can get, that's right. |
| THE DEFENDANT: | Thirty years. |
| THE COURT: | Which was the maximum. |
| MR. SULLIVAN: | Life on Count 1. Up to 20 years on Count 2. |
| THE COURT: | So it's not 30 years. It's life. The most you could get would be your natural life in prison. |

. . .

| | |
|---|---|
| THE COURT: | Okay. Understanding the maximum punishment that Mr. Sullivan stated as well as the possibility that you could lose the civil rights that I had stated, do you still wish to plead guilty? |
| THE DEFENDANT: | Yeah, I got to. Yeah. |

. . .

| | |
|---|---|
| THE COURT: | Do you understand that if the sentence you receive is more severe than what you expect, you will still be bound by your plea and will have no right to withdraw from your plea? |

12

THE DEFENDANT: Explain that one to me.

MR. SWAFFORD: If he accepts this plea, there is no backing out. If you want to back out, back out now. But we're not going - - If he accepts this plea, this is it, we're - - you're bound with this.

THE DEFENDANT: Yeah, I understand.

(Rearraign. Tr. at pp. 5-7, 15-24).

Regardless of any alleged promises by his attorney as to the length of his sentence, this Court went to great effort to ensure Petitioner understood his sentence would be calculated and determined by the Court and his guilty plea would be binding even if the sentence was more severe than he expected. Even if Petitioner initially decided to plead guilty based on erroneous information as to his potential sentence, this does not amount to prejudice where the Court specifically informed him he could be subject to a sentence up to and including the statutory maximum and his sentence had not yet been determined and therefore was not binding on the Court. *See Warner v. United States*, 975 F.2d 1207, 1211-12 (6th Cir. 1992) (finding the petitioner was not prejudiced by attorney's erroneous representations of concurrent sentences where the Court specifically informed him the attorney's advice was incorrect).

Petitioner's contentions his attorney failed to explain possible enhancements to his sentence is not supported by evidence in the record and is in conflict with Petitioner's decision to plead guilty after being fully apprised the statutory maximum penalty was life in prison.

THE COURT: So it's not 30 years. It's life. The most you could get would be your natural life in prison.

MR. SWAFFORD: Bryan, I have explained to you - -

THE DEFENDANT: You is good. You is good. He's a good

13

|                   |                                                                                                                                                                                                                          |
|-------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                   | lawyer.  I'm not doubting him at all.  The way you explained it to me made it  - - because I'm now in front of you.  Do you feel me?                                                                                      |
| THE COURT:        | And it's your life.                                                                                                                                                                                                       |
| THE DEFENDANT:    | Yes.   And I do understand.   I never said nothing wrong with you.   I'm telling the Judge.  He's a good lawyer.  I give him, you know - - He's   cool.   He's not him (Indicating.)   I never heard them figures before.  Them figures right there just threw me way off. |

(*Id.* at pp. 18-19).

Petitioner does not cite any specific deficiencies in his counsel's representation, nor does he point to any evidence that his counsel did not "fully explain."  Petitioner stipulated to facts supporting the elements of the offenses to which he pleaded guilty and the record supports the conclusion Petitioner and his counsel understood the evidence against him (*id.* at pp. 23-24). The record of the proceedings reflects his satisfaction with his representation and further evidences Petitioner was fully aware of the inability for counsel to promise him a sentence.   Petitioner has failed to set forth facts entitling him to relief.  "A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit." *Henley v. United States*, 1:05-CV-174, 1:01cr148, 2008 WL 3852364 at * 12 (E.D. Tenn. Aug. 14, 2008) (citing *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972)).

Accordingly, the Court finds Petitioner was not denied effective assistance of counsel and this claim does not warrant relief under § 2255.

## B.    Involuntary Guilty Plea

Petitioner claims his plea of guilty was not knowing, intelligent, or voluntary.  Instead, he argues, his plea was induced by a false promise of a sentencing range of ten to fifteen years made

by his attorney. For the reasons discussed above, this cannot form the basis for an unknowing or involuntary guilty plea as the Court made clear to Petitioner that his counsel could not promise or guarantee any sentencing range at the time of his rearraignment.

Petitioner moved to withdraw his guilty plea at the time of sentencing, but this motion was denied. By failing to appeal this decision at the time of his appeal, he has procedurally defaulted on this claim. With the exception of a claim of ineffective assistance of counsel, a petitioner procedurally defaults a claim by failing to raise it on direct review. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Once a claim is procedurally defaulted, it may only be raised in a § 2255 motion if the petitioner can demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622; *Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001). Petitioner does not attempt to demonstrate "cause" on this claim nor can he establish "actual innocence." *See Schlup v. Delo*, 513 U.S. 298, 327-328 (1995) (defining the establishment of actual innocence as petitioner's demonstration that "in light of all the evidence" it is "more likely than not that no reasonable juror would have convicted him").

Even if Petitioner had not procedurally defaulted on this claim, he would not be entitled to relief. The transcript of the rearraignment proceeding disputes Petitioner's argument his claim was involuntary.

THE COURT:          Has anyone threatened you or anyone else or forced
                    you in any way to plead guilty?

THE DEFENDANT:  No.

(Rearraign. Tr. at p. 4).

Pursuant to Fed. R. Crim. P. 11, the Court is required to ask a defendant certain questions

15

to create a record that may insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Petitioner's "declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-4 (1977). Rule 11 ensures a colloquy that exposes the defendant's state of mind through personal interrogation. *Baker v. United States*, 781 F.2d 85, 88 (6th Cir. 1986). An examination of the record provides no support for Petitioner's claim his plea was coerced and involuntary. Petitioner told the Court he had an opportunity to discuss his claims with his counsel and was satisfied with his representation, he understood the consequences of his guilty plea, and chose to plead guilty rather than go to trial (Rearraign Tr. at pp. 4-5).

Accordingly, the Court finds Petitioner's claim of an involuntary guilty plea is not supported by the record and provides no basis for relief.

### C. Violation of Sixth Amendment Right to Counsel

Petitioner contends he was denied the benefit of a public defender while he "sat in a California state prison for months awaiting extradition to Tennessee" (Court File No. 419 at p. 7). Petitioner argues the lack of counsel during this time prevented him from proffering or receiving advice from counsel as to resolving his case "in a more favorable way." Again, Petitioner has procedurally defaulted on this claim by failing to raise it at any prior point before the Court or as part of his direct appeal. Petitioner does not attempt to establish "cause" for his failure to raise, other than to say he did not know to raise it. Furthermore, Petitioner's actions after being appointed counsel in Tennessee contradict his assertions of a willingness to proffer.

Petitioner's unwillingness to proffer or cooperate was discussed at his sentencing and resulted in a denial of a reduction for acceptance of responsibility (Sentencing Tr. at p. 141). The

government summarized the evidence presented at sentencing and his lack of assistance, opposing any reduction for acceptance of responsibility.

> In terms of acceptance of responsibility, Judge, this has been a very frustrating case for me. Mr. Miller is a very frustrating person to deal with. You heard some testimony that he was given the opportunity to proffer and that he has never adequately identified his sources of supply. He comes into court and said, 'I didn't deal any cocaine.' The Court heard evidence that he did. He says 'I'm not a leader.' The Court heard evidence that he was. He says, going into it, 'No guns.' The Court heard abundant evidence about guns. Judge, you also heard testimony from the defendant himself, when he tries to wiggle out of the plea. All of those, I think point in only one direction for the Court - - that this man has not adequately accepted responsibility for his involvement in the offense and should not be rewarded for his actions today.

(Sentencing Tr. at pp. 139-140).

The record demonstrates Petitioner was afforded opportunities to resolve his case in a more favorable way, by accepting responsibility, proffering information, or otherwise cooperating, but chose not to take advantage of them. Petitioner's claim an earlier appointment of counsel would have affected the outcome of his case is contradicted by the record.

The Court therefore finds Petitioner's claim of denial of his Sixth Amendment right to counsel affords no basis for relief.

**D.    Abuse of Discretion in Sentencing**

Petitioner argues the Court abused its discretion by failing to depart below the Guidelines for his sentence and contends there was "no basis for the judge to find the fact that a firearm was present or the defendant was a leader" (Court File No. 419 at p. 8). The Sixth Circuit considered these same arguments and affirmed Petitioner's sentence (Court File No. 406 at pp. 5-6). "Absent exceptional circumstances, or an intervening change in the case law," Petitioner may not "use his

§ 2255 petition to relitigate" issues decided on direct appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).

Petitioner does not point to any exceptional circumstances or changes in the law to warrant relitigating his sentence. This Court has already considered Petitioner's sentence twice and the Sixth Circuit has affirmed it.

Accordingly, this claim provides no basis for relief under § 2255.


## IV. __CONCLUSION__

For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 23).

An Order shall enter.

/s/
CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE